UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

───────────────

CASE NO. 22-12515

───────────────

JAMES B. RILEY, as Personal Representative
of the Estate of BARRETT RILEY, deceased,

Appellant,

v.

TESLA, INC., d/b/a
TESLA MOTORS, INC,

Appellee.

───────────────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

───────────────────────────────────

───────────────

### APPELLANT'S INITIAL BRIEF

───────────────

ROY D. WASSON
WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 372-5220 Telephone
roy@wassonandassociates.com
e-service@wassonandassociates.com

CURTIS B. MINER
THOMAS KROEGER
COLSON HICKS EIDSON, P.A
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 476-7400 Telephone
curt@colson.com
tom@colson.com

Counsel for Appellant

*Riley v. Tesla, Inc.*
Case Number 22-12515

## CERTIFICATE OF INTERESTED PERSONS/
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 28-1(b), the undersigned counsel for Appellant, James B. Riley, certifies that the following is a list of all trial judge(s) and all attorneys, persons, associations or persons, firms, partnerships, corporations, or governmental entities that have an interest in the outcome of this case:

1.  Bowman and Brooke LLP, Counsel for Appellee

2.  Colson Hicks Eidson, Counsel for Appellant

3.  Eidson, Lewis S., Counsel for Appellant

4.  Galvin, Vincent, Counsel for Appellee

5.  Georges, Denise Helen, Counsel for Appellant

6.  Lumish, Wendy Frank, Counsel for Appellee

7.  Miner, Curtis Bradley, Counsel for Appellant

8.  Montoya, Patrick Shanan, Counsel for Appellant

9.  Riley, James B., Appellant

10. Rudock, Robert John, Counsel for Appellee

11. Hon. Smith, Rodney, District Court Judge

12. Telsa, Inc, Appellant

13. Hon. Valle, Alicia O., Magistrate Judge

14. Wasson, Roy D., Counsel for Appellant

15. Wasson & Associates, Chartered, Counsel for Appellant

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*Riley v. Tesla, Inc.*
Case Number 22-12515

By:    *s/Roy D. Wasson*
ROY D. WASSON
Florida Bar No. 332070

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellant suggests that the nature of the issues in this case, and the facts and procedural history hereof, render this one in which oral argument would be useful to the Court. Appellant respectfully requests the opportunity to present oral argument.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. C1 of 2

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF CITATIONS .......................................................................................... v

STATEMENT OF JURISDICTION ....................................................................... vii

STATEMENT OF THE ISSUES………………………………………………..1

STATEMENT OF THE CASE ................................................................................ 1

       A.    Course of Proceedings and Dispositions: ............................................ 2

       B.    Statement of the Facts: ...................................................................... 13

STANDARD OR SCOPE REVIEW ………………………………………….21

SUMMARY OF THE ARGUMENT……………………………………………21

I.      THE DISTRICT COURT ERRONEOUSLY EXCLUDED DR.
        WHITE'S OPINION THAT THE FATAL FIRE WAS CAUSED
        BY LACK OF INTUMESCENT FIRE-RETARDANT MATERIAL
        AND ERRONEOUSLY ENTERED SUMMARY JUDGMENT
        IN FAVOR OF TESLA ON THAT CLAIM……………………………23

      A.   Introduction:………………………………………………………23

      B.   Standard for Excluding Expert Testimony Under *Daubert*:………..24

      C.   Dr. White's Supplementary Declaration Incorrectly Stricken………33

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

II.    THE DISTRICT COURT ERRONEOUSLY EXCLUDED
       DR. WHITE'S TESTIMONY ABOUT BATTERY
       CELL WALL THICKNESS ………………………………………………40

    A.    Introduction:………………………………………………………40

    B.    Bases for Dr. White's Opinion That Cell Walls Were Too Thin:…...42

CONCLUSION ...............................................................................46

CERTIFICATE OF SERVICE ................................................47

CERTIFICATE OF COMPLIANCE.........................................48

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

# TABLE OF CITATIONS

## Cases

*Arevalo v. Mentor Worldwide LLC*, No. 21-11768; 2022
    U.S. App. LEXIS 30922 (11th Cir. Nov. 8, 2022) ........................................32

*Aycock v. R.J. Reynolds Tobacco Co.* 769 F.3d. 1063 (11th Cir. 2014) ................33

*Black v. Food Lion, Inc.*, 171 F.3d 308 (5th Cir. 1999) .........................................27

*Cantore v. W. Boca Med. Ctr.*, 254 So. 3d 256 (Fla. 2018) ....................................32

*Davis v. Williams* 451 F.3d. 759 (11th Cir. 2006)……………………………….8, 24

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)……..*passim*

*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) ..............................................26

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)...................................................27

*In re 3M Combat Arms Ear Plugs Prods. Liab. Litig*, 2021
    U.S. Dist. LEXIS 125752 (N.D. Fla. Apr 8, 2021) .....................................32

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ...............................25

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ........................................................25

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)…………………………..21, 27

*LeMaster v. Glock, Inc.*, 610 So. 2d 1336 (Fla. 1st DCA 1992) ............................30

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) .................................27

*N.J. Dep't. of Envt'l Prot. v. Amarada Hess Corp.*, No. 15-6468 (FLW);
    2019 U.S. Dist. LEXIS 146336 (D.N.J. Aug. 28, 2019) ..............................38

*Pierre v. Intuitive Surgical, Inc.* 854 F. App'x 316 (11th Cir. 2021)……....12, 30-31

*Prieto v. Total Renal Care, Inc*, 843 F. App'x 218 (11th Cir. 2021) .....................33

*Pritchard v. Dow Agro Servs.*, 263 F.R.D. 277 (W.D. Pa. Nov. 12, 2009)…...37-40

*Simmerman v. Ace Bayou Corp.*, No. 5:14-382-DCR; 2016 U.S. Dist. LEXIS
    15365 (E.D. Ky. Feb. 9, 2016) .......................................................................34

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*United States v. Williams*, 684 F. App'x 767 (11th Cir. 2017) ..............................26

## **Statutes**

28 U.S.C. §1291 ..............................................................................................vii

28 U.S.C. §1332(a) .........................................................................................vii

## **Rules**

Fed. R. Civ. P. 26…………………………………………………….4, 35-36

Fed. R. Civ. P. 37 ...........................................................................................35

Fed. R. Evid. 403 ............................................................................................4

Fed. R. Evid. 702……………………………………………………*passim*

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT OF JURISDICTION

This is an appeal from orders entered by the United States District Court for the Southern District of Florida. The district court had jurisdiction over the controversy because it was a civil action between citizens of diverse states with a matter in controversy exceeding the value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(a).

This Court's jurisdiction was invoked by filing a notice of appeal within thirty days of an appealable order entered by the district court. This Court has jurisdiction over this appeal under 28 U.S.C. §1291 because it seeks review of a final judgment of the district court.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT OF THE ISSUES

The first main issue is whether the district court erroneously excluded from evidence Dr. White's opinion that the fatal fire was caused by lack of intumescent fire-retardant material and, based upon the lack of that evidence, erroneously entered summary judgment in favor of Tesla on that claim. The first sub-issue in that analysis is whether the court erroneously excluded the testimony under the liberal admissibility standard of *Daubert*. The next sub-issue is whether Dr. White's supplementary declaration was incorrectly stricken wherein Dr. White testified that he held his opinions within a reasonable degree of engineering certainty, which opinions which would have overcome the district court's rejection Dr. White's causation opinions as speculative.

The next issue is whether the district court erroneously excluded Dr. White's testimony about battery cell wall thickness in light of his personal observations at the vehicle inspection, examination of photographs of the battery cells, and the data sheet for the battery from Panasonic which recognizes that cell wall thickness could be up to 20 percent (20%) thinner than the thickness Dr. White opined would be appropriate to prevent runaway thermal propagation.

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Dispositions:

This is a final appeal in a civil action for wrongful death brought under Florida State law. The Plaintiff, James B. Riley, as Personal Representative of the estate of his deceased son, Barrett Riley, filed this action in the United States District Court for the Southern District of Florida asserting diversity jurisdiction. DE 1. The complaint alleged that the Defendant, Tesla, Inc. d/b/a Tesla Motors, Inc (herein sometimes referred to as "Tesla") was liable to Plaintiff for the death of his son under theories of strict product liability and negligence. DE 1 at 11-14.

The negligence count was based upon allegations that James Riley had directed Tesla to activate a speed limiting device on the vehicle "in an effort to improve its safety for the benefit of their son as well as any passengers in the vehicle." DE 1 at 6. The complaint alleged that, following completion of a service call on the vehicle, "Barrett Riley returned to Tesla with the Model S and Tesla improperly removed the speed limiter . . . without the permission or consent of James Riley or Jenny Riley." DE 1 at 6-7.

The complaint asserted strict product liability claim against Tesla asserting that the fire which resulted in the collision was caused by defects in "lithium-ion

battery . . .which is widely known to be prone to a condition referred to as 'thermal runaway'" DE 1 at 9.

Tesla answered the Plaintiff's complaint, denying the material allegations thereof and raising affirmative defenses thereto. DE 3. Tesla filed a motion for summary judgment arguing that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. DE 34. Plaintiff responded in opposition to that motion for summary judgment, asserting that sufficient evidence of Tesla's negligence and strict liability was established by the opinions of Plaintiff's accident reconstruction expert, Robert Caldwell and Plaintiff's battery expert, Ralph White. DE 38 at 12-15.

Plaintiff in his response in opposition to Tesla's motion for summary judgment stated that "Plaintiff does not intend to pursue claims under Counts II or III that the Tesla model S's door handles were defective . . .[and stated that] plaintiff does not intend to pursue trial claims based on failure to warn as to any product defect, and so partial summary judgment on the claims alleged in . . . the Complaint is appropriate." DE 38 at 17.

Tesla also filed motions to exclude testimony of Plaintiff's biomechanical expert witness, Kelly Kennett (DE 28), to exclude certain testimony of Plaintiff's accident reconstruction expert, Robert Caldwell (DE 29), and to exclude the testimony of Plaintiff's battery expert, Dr. Ralph White "under Federal Rule 702, as

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

interpreted in *Daubert v. Merrell Dow Pharmaceuticals, Inc* . . .and Rule 403." DE 31 at 1.

In Plaintiff's responses to these motions, it attached the affidavit of Robert Caldwell (DE 40-1), the affidavit of Kelly Kennett (DE 41-3) and a sworn declaration of Dr. Ralph White. DE 42-2. As noted by the district court: "In response to Tesla's *Daubert* Motions, Plaintiff filed affidavits by each expert to purportedly 'provide a better understanding of the sufficiency of the facts and data used' and 'understand the reliability of the methodology used' for the opinions." DE 117 at 5.

Tesla, in turn, moved to strike Plaintiff's expert affidavits. DE 44. ("Tesla's Motion to Strike"). Tesla generally argued that the affidavits constitute impermissible new opinions that violate Rule 26. DE 44 at 1-2.

Tesla's motion to exclude Dr. White's testimony included the argument that Dr. White's opinions that the battery cell walls were too thin was factually incorrect because, in Dr. White's report he "offered a proposed thickness of the cells [in which] he suggested something greater than 200 microns (0.20mm) is appropriate," whereas "Tesla's expert's CT scan of an undamaged cell from Riley's vehicle confirmed the thickness of the can wall to be 0.21mm." DE 31 at 16. Tesla's motion sought to exclude Dr. White's testimony that Tesla should have used fire retardant material in the design of the battery to prevent the thermal runaway propagation, arguing that Dr. White's belief that such intumescent material between the cell walls

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

was necessary overlooked the fact that "there was a ceramic blanket on the top of the battery pack, and that it acts as a barrier between the battery and cabin." DE 31 at 18.

A hearing was conducted on Tesla's Motion to Exclude Testimony from Plaintiff's Experts, Motion to Strike their affidavits and Tesla's Motion for Summary Judgment. DE 109. By its omnibus order entered on May 11, 2022 the district court granted Tesla's motions to strike the experts' supplemental affidavits as untimely; granted Tesla's motion to exclude Kelly Kennett's opinion that Barrett Riley would not have been "fatally, or even seriously, injured in this crash" without the ensuing fire that consumed the automobile; excluded Mr. Caldwell's testimony that Barrett could have made the curve at 85 mph as "unreliable because he calculated the turn radius form a different lane . . . and he is not qualified to opine on human factors"; and denied Tesla's motion to strike Dr. White's opinions, concluding "that Plaintiff has meet the minimum admissibility standard for Dr. White's opinion that the fatal fire resulted from thermal runaway propagation based on the lack of intumescent material in the Model S battery." DE 117 at 31.

Plaintiff supplemented Dr. White's report and deposition with his sworn declaration amplifying the basis for his opinions. DE 42-2. Tesla move to strike Dr. White's declaration, arguing that it was an untimely effort to supplement his

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

opinions offered beyond the expert disclosure deadlines set forth in the district court's order of April 19, 2021. DE 44.

The district court entered its Omnibus Order on Motion to Strike Expert Affidavits, Motions to exclude experts under Daubert and Motion for Summary Judgement. DE 117. In that order the district court struck Dr. White's testimony in his declaration "regarding cell thickness and characterization of a 'randomly harvested'" cell used by Tesla's expert in evaluating that battery. DE 117 at 14.

The district court also struck Dr. White's declaration to the extent that it replied upon a "deferential diagnosis" methodology or arriving at his opinions. DE 117 at 15. That order also struck Dr. White's declaration to the extent that it amplified the likelihood "that the cell walls and lack of fire-retardant material resulted in runaway thermal propagation . . . within a reasonable degree of engineering certainty," as opposed to language in his report and deposition that included words "like 'maybe' and 'possible.'" DE 117 at 15. In its order, the district court found that "Dr. White's opinions regarding the thickness of the cell walls are unreliable and irrelevant based on inaccuracies in his methodology and insufficient information." DE 117 at 30. However, the district court denied Tesla's motion to strike Dr. White's testimony concerning the batteries lack of intumescent material between cells, holding as follows:

> Tesla challenges Dr. White's opinion that "the safety of the Model S . .
> . could have been improved by using an intumescent fire retardant

material that expands when heated to seal around items consumed by fire." White Report at 5; see also (ECF Nos. 31 at 18-19, 47 at 7-8) (challenging Dr. White's opinion on intumescent material as a potential fire retardant that allegedly Tesla had but chose not to use in the Model S battery). Although Tesla also argues that Dr. White fails to account for other safety features that would have served as fire retardant material, (ECF No. 47 at 7-8), Plaintiff clarifies that Dr. White's opinion dealt with the absence of fire retardant material between the cells of the battery (e.g., blue visible material that was used in a 2011 Model 3) and not about other fire-retardant material around the battery pack itself (e.g., a ceramic blanket on top of the battery pack). (ECF No. 42 at 18).

The undersigned finds that Dr. White's opinion regarding the fire retardant intumescent material meets the liberal admissibility standard under Daubert. Dr. White testified that upon a visual inspection of the battery, he did not see any material similar to the blue material that he had seen in testing of the 2011 Model 3. White Dep. 120:20-121:6. On this limited point, the undersigned finds that Dr. White's visual inspection is a reliable method and Dr. White applied the principles and methods reliably. Tesla, of course, is free to cross-examine Dr. White on this point.

To summarize, Tesla's Motion to exclude Dr. White's opinion is granted in part and denied in part. More specifically, Dr. White's opinion regarding cell wall thickness is excluded as unreliable, but his opinion regarding the lack of intumescent fire retardant material is admissible under Daubert. Accordingly, the undersigned concludes that Plaintiff has met the minimum admissibility standard for Dr. White's opinion that the fatal fire resulted from thermal runaway propagation based on the lack of intumescent material in the Model S battery.

DE. 117 at 30-31.

The district court denied Tesla's motion for summary judgment on Plaintiff's claim based upon negligence in removing the speed limiting feature after Riley's father had Tesla activate in the vehicle. DE 117 at 35-36.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Likewise, the district court denied Tesla's motion for summary judgment on Plaintiff's battery defect claim based upon the lack of intumescent material to provide protection against the propagation of thermal runaway from one cell to adjacent cells. DE 117 at 36-37. The district court found as follows concerning that claim:

> Here, in relevant part, Dr. White has opined that: (i) "[t]he safety of the battery pack in the Tesla Model S . . . could have been improved by using an intumescent fire retardant material that expands when heated to seal around items consumed by fire," White Report at 5; (ii) "Tesla did not use a fire-retardant material that may have prevented thermal runaway propagation," id. at 20; and (iii) "Tesla chose not to use an intumescent material on the lithium-ion battery cells in their Tesla Model S . . . . This decision led to a less safe battery pack." *Id*. The undersigned must consider all inferences drawn from Dr. White's opinion and testimony in the light most favorable to Plaintiff and resolve all doubts against Tesla. *Davis v. Williams*, 451 F. 3d 759, 763 (11th Cir. 2006). Thus, although tenuous, Dr. White's opinion sufficiently supports Plaintiff's battery defect claim so as to survive summary judgment.19 Rather, based on the admissible evidence, the undersigned concludes that there is a triable issue of fact on whether the vehicle's battery was defective based on the lack of intumescent material. At trial, Plaintiff must meet his burden of proving that the lack of intumescent fire retardant material in the Model S battery pack created an unreasonably dangerous condition.

> Accordingly, the Court denies Tesla's Motion for Summary judgment on the battery claim based on the admissible testimony of Dr. White regarding the lack of intumescent material.

DE 117 at 37-38.

Tesla filed a motion for reconsideration for clarification of the district court's order on Tesla' motion for summary judgment on causation as to Plaintiff's battery

claim. DE 125. In that motion, Tesla noted that "the Court found Plaintiff sustained his burden of creating a fact issue as to whether the battery was defective because its design did not incorporate 'intumescent material,' and stated that "Tesla is not asking the court to revisit that finding." DE 125 at 1. However, Tesla argued that the district court's order "did not address whether there is a triable issue of fact as to causation" resulting from that defect. DE 125 at 2. Tesla argued that "plaintiff has no expert offering an opinion that (1) the car caught fire because intumescent material was not incorporated into the battery pack design, and / or (2) if intumescent material had been used in the battery pack, then a fire would not have resulted." DE 125 at 3. Tesla's motion argued that summary judgment should be granted upon reconsideration on the battery defect claim because "plaintiff has not offered evidence of the requisite 'but for' cause of link" between the lack of intumescent material and the fire that killed Barrett Riley. DE 125 at 3.

Plaintiff responded in opposition to that motion for reconsideration, first arguing that "Plaintiffs battery expert, Ralph White, presented testimony that the fire that consumed the car in question resulted from thermal runaway propagation in the lithium-ion battery pack." DE 130 at 5. Plaintiff pointed to Dr. White's deposition where he "testified that, in the pictures taken by Tesla's expert Ashish Aurora, 'you can see very clearly from looking at the (battery) modules that were involved in the crash and the thermal runaway propagation in those modules.'" DE 130 at 5. And he

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

argued that, "[i]n addition, Dr. White describes a figure shown on page 16 of his report, 'and you can see that thermal runaway propagation occurred. The cells that are on the left of that picture . . . were affected by thermal runaway propagation. They were not crushed.'" DE 130 at 5.

Plaintiff's response also addressed Tesla's argument that plaintiff had not presented evidence of the causal connection between that defect and the resulting fire, arguing as follows: "Second, Tesla overlooks Dr. White's deposition testimony that, if the fire-retardant intumescent material had been used between the cells of the battery pack, the thermal runaway propagation 'would probably not happen.' DE 31-2 at 120 His full explanation of the causation mechanism was as follows:

> Q. What would the intumescent fire-retardant material actually do?
> A. Well, it would tend to prevent the thermal runaway propagation from cell-to-cell. It would act as a fire retardant. What happens when we have thermal runaway out of an individual cell is oftentimes the cell will emit or eject the material that's inside the cell, including the electrolyte. And the electrolyte oftentimes because of the temperature and the possibility of a spark nearby will flame up.

> And so the flaming electrolyte then causes the cells nearby to heat up rapidly and so forth, and we have this propagation problem.

> If there was fire-retardant material, then that would probably not happen, and I think that's part of what they discovered by in 2011 when they were testing some of these materials.

DE 31-2 at 119-120.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Plaintiff argued that evidence of causation included Tesla's own patent relating to the use of intumescent material in battery packs:

> Before it sold the Model S to James Riley, Tesla had applied for and obtained a patent for a design to mitigate or prevent thermal runaway. Tesla is the assignee of U.S. Patent No. 7,763,381 B2 (issued July 27, 2010), titled "Cell Thermal Runaway Propagation Resistance Using Dual Intumescent Material Layers" (the "Patent") (SOF ¶109.) The Patent states that it provides "a means for inhibiting the propagation of thermal runaway within a plurality of batteries." Patent [DE 39-8] at Ex. 2 at col. 2. As Tesla's inventors put it, "the intent of the present invention is to minimize the effects of thermal runaway on cell s that are adjacent to the affected cell, thereby resisting thermal runaway propagation." Id. at col. 5:66-col. 6:2. Further, "[t]he inventors have found that use of an intumescent material applied directly to a cell as described [in the Patent] . . . provides significant resistance to the propagation of a thermal runaway event." Id. at col. 6:33-35. The Patent then discusses specific testing comparing the resistance to thermal runaway propagation of cells that had the intumescent coating with cells that did not have it: the cells with the coating successfully resisted thermal runaway, while those without it did not. See id. at col. 6:53-col. 7. In short, Tesla's own Patent buttresses Dr. White's testimony.

DE 130 at 5-7.

The district court granted Tesla's motion for reconsideration regarding the battery defect claim. DE 135. Although noting that "[r]econsideration of a previous order is an extraordinary remedy to be employed sparingly," and recognizing that "(t)he question of proximate cause is for the jury unless reasonable persons could not differ in their determination of the question," the Court granted Tesla's motion, finding as follows:

> Having reviewed Tesla's arguments and the Omnibus Order, the undersigned finds an inadvertent but material omission in the Omnibus

Order, which the Court must correct. Although the Omnibus Order concludes that "there is a triable issue of fact on whether the vehicle's battery was defective based on the lack of intumescent material," (ECF No. 117 at 38), the Omnibus Order did not address whether the lack of intumescent material (an alleged defect) caused the fire at issue in this case. The undersigned has again reviewed Dr. White's testimony with this in mind and finds it insufficient to establish proximate cause.

At best, Dr. White testified that had Tesla used intumescent material, thermal runaway propagation "would probably not happen." (ECF No. 31-2) (White Dep. Tr. 119:25-120:2). Therefore, even if the Court considers all inferences drawn from Dr. White's opinion and testimony in the light most favorable to Plaintiff, there is insufficient evidence that the absence of intumescent material caused the fire. Similarly, there is no evidence that use of intumescent material (which may have cured the alleged defect) would have prevented the fire in this multi-impact, high speed crash. Simply put, Dr. White's testimony as to probabilities is insufficient to support the element of causation for Counts II (strict liability) and III (negligence) on the battery claim. Accordingly, this is one of the limited circumstances where the lack of evidence regarding the element of proximate cause prevents the battery claim from proceeding to trial. Pierre, 854 F. App'x at 321 (affirming grant of summary judgment on claim of defect where "the mere possibility of causation is not enough").

DE 135 at 3.

The case went to trial on Plaintiff's sole remaining claim of negligence in disabling the speed limiter. DE 151. The jury returned a verdict finding Tesla negligent and awarding damages to the Plaintiff. DE 173. However, that verdict apportioned only 1 percent fault unto Tesla, and assigned 90 percent of fault unto the decedent, Barrett Riley, and 9 percent to his father, James Riley, assumedly for Mr. Riley's role in continuing to allow Barrett Riley to drive the automobile with knowledge of his propensity to exceed speed limits. DE 182. Judgment was entered

12

thereon, ordering the amount of $105,000 in favor of the plaintiff from the $10,500,000 in damages James and Jenny Riley sustained as a result of their son's death. DE 182 at 2.

Final judgment was entered consistent with the jury's verdict. DE 182. This appeal was timely perfected. DE 191. Thereafter, in response to a jurisdictional question from this Court, Plaintiff filed an amended complaint alleging the jurisdictional allegation of diversity of citizenship. DE 197.

### B. **Statement of the Facts:**

This case arises from a fatal accident that occurred on May 8, 2018 in the 1300 block of Seabreeze Boulevard, in Fort Lauderdale, Florida involving a 2014 Tesla Model S (the "Model S" or "vehicle") that was driven by 18 year-old Barrett Riley ("Barrett"). DE 117 at 2. While trying to pass another car, Barrett lost control of the Model S and crashed as he was driving southbound at approximately 116 mph on a curve with a posted 25 mph speed limit. *Id.* The Model S made five points of impact, initially mounting a concrete curb (Curb 1) and hitting two walls (Walls 1 and 2) on the west side of the road, deflecting off Wall 2, and crossing five lanes of traffic while rotating, then hitting two other points on the east side of the street (Curb 2 and a light pole) before coming to rest. *Id.* Barrett and the front seat passenger died in the crash; a second passenger in the back seat (who was not wearing a seatbelt) was ejected and survived the accident. *Id.*

Approximately two months prior to the accident in March 2018, Barrett's parents, Mr. and Mrs. Riley (the "Rileys"), had requested that Tesla install a speed limiter on the vehicle to limit its maximum speed to 85 mph. *Id.* Although Tesla installed the speed limiter as requested, it later removed the speed limiter without the knowledge or consent of the Rileys after the vehicle was taken to Tesla for servicing. *Id.* Tesla admitted that it did not inform the Rileys that the speed limiter had been disabled until after the accident. *Id.*

The Plaintiff identified three experts: 1) biomechanical engineer Kelly B. Kennett; 2) accident reconstruction expert Robert Caldwell; 3) Chemical engineer and lithium-ion battery expert Dr. Ralph White. DE 117 at 3. Dr. White held opinions including the opinion that the lithium-ion battery in the subject Tesla automobile was defective and that its defects resulted in the battery pack going into "runaway thermal propagation" which caused a massive fire to consume the vehicle and kill the decedent.

According to Tesla's expert, the 2014 Tesla Model S was equipped with an 85 kWh Li-ion battery located beneath the floor of the car. DE 31-3 ¶ 23. The battery consists of 16 modules that sit on mica paper. *Id.* ¶ 36. Each module contains 444 individual Li-ion cells separated by air, a ceramic heat blanket, mica sheets, and a thermal barrier made of woven fiberglass. *Id.* ¶¶ 15, 23. The 16 modules and their individual cells comprise the "battery pack" enclosed in a ¼ inch thick aluminum

14

alloy encasement. *Id.* ¶ 36. The top of the battery pack is covered with a ceramic blanket to protect occupants in the cabin of the vehicle in the event of a fire. *Id*. ¶ 56.

Thermal runaway occurs when the heat generated by an individual battery cell becomes great enough to cause combustion of the battery and materials near the battery. DE 39-8 at 28. One Tesla patent explains that: "[w]hen a battery undergoes thermal runaway, it typically emits a large quantity of smoke, jets of flaming liquid electrolyte, and sufficient heat to lead to the combustion and destruction of materials in close proximity to the cell. If the cell undergoing thermal runaway is surrounded by one or more additional cells as is typical in a battery pack, then a single thermal runaway event can quickly lead to the thermal runaway of multiple cells which, in turn, can lead to much more extensive collateral damage." *Id*.; *see also* DE 31-2 at 119.

Dr. White's report contained the opinion that "the battery pack in the Tesla Model S, P85D is not safe for several reasons." DE 31-1 at 19. Those defects included Dr. White's determination that "[t]hese cells. . . had thin cell walls, which also made them less safe. In addition, the individual battery sales were not coated with an intumescent fire retardant material that was available." DE 31-1 at 5.

Tesla challenged Dr. White's credentials as an expert. DE 31 at 2. However, Dr. White has a long and distinguished career as a professor of chemical engineering,

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

practicing chemical and nuclear engineer, consultant to industry—including the automotive and electrical engineering industries—and is a published author of numerous papers and scholarly presentations in peer-reviewed journals, including papers and presentations specifically dealing with the performance and characteristics of batteries. DE 42-1.

Dr. White has three degrees in engineering, including a Master's and PhD in chemical engineering from the University of California at Berkeley. He has held academic faculty positions for approximately forty-four years, including holding the roles of Chair of the Department of Chemical Engineering and Director of the Center of Electrochemical Engineering and Dean of the College of Engineering and Computing at the University of South Carolina, where he is currently a Professor and Distinguished Scientist. DE 31-1at 2.

Dr. White has extensive qualifications in the specific area of battery design and technology. He is a recipient of the Battery Division Research Award from the Electrochemical Society, Inc.; was recognized as having presented the Best Paper of the Conference at the Fifth Annual Battery Conference on Applications and Advances; has been actively working on lithium-ion battery cells and lithium-ion battery packs for twenty-eight years; and has been a member of NASA's Engineering Safety Center, Electrical Power Technical Discipline Team since August of 2009. DE 31-1 at 2.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Specifically in the context of thermal runaway propagation—the mechanism of the fatal fire that consumed the Tesla vehicle and killed Barrett Riley—Dr. White's work as a member of that NASA team was recognized with the Group Achievement Award to NASA Lithium-Ion Runaway Assessment Team in 2013. DE 31-1 at 3.

Dr. White has served as a consultant in the field of chemical engineering—including battery chemistry and design—for companies including the Ethel Corporation, Chevron, Dow Chemical U.S.A., Exxon Corp., General Motors Corp., Allied Corp. and Boeing Corp. He has served as a consultant and expert witness to Rayovac, Energizer, General Electric, and other industries involved in the design, use, and sale of battery systems.  DE 42-1

Among Dr. White's numerous awards and achievements relevant to his testimony in this case, Dr. White was awarded the Best Paper of the Conference for his paper on battery cells at the Fifth Annual Battery Conference on Applications and Advances and the Battery Division Research Award from the Electrochemical Society, Inc. He is a registered professional engineer. DE 42-1.

Dr. White was invited to join a team of the Department of Energy's National Renewable Energy Laboratory working specifically with a project "to develop the capability of simulating electrical vehicle batteries and specifically . . . for the General Motors Volt . . . a plug-in hybrid vehicle . . . [which] had lithium-ion

batteries." DE 31-2 at 24. The purpose of that program was "so that companies like General Motors and Ford and other electric vehicle developers could develop lithium-ion battery packs for electric vehicles in a more efficient way." DE 31-2 at 25.

Specifically, as it pertains to the present case, the challenge to the team on which Dr. White was a member "was trying to simulate the heat transfer . . . [because] it's critically important to be able to remove heat from the individual cells in a battery pack during operation so as to prevent problems associated with too much heat being generated and not being removed." DE 31-2 at 25.

Dr. White's experience with the Chevy Volt battery simulation program was not his only experience with EV batteries. His work with the ANSYS software company in developing the battery simulation software was used not only in connection with the Volt, "but also for the Bolt, all electric, General Motors electric vehicle." DE 31-2 at 25-26.

Returning to this case, Dr. White conducted a review of materials to permit him to arrive at the opinions that the cell walls on the Tesla's battery system were too thin and that the battery system should have been designed with an intumescent fire-retardant material. As he disclosed at his deposition, Dr. White reviewed Tesla test documents, the report of Tesla's expert Ashish Arora, a report from Tesla's

expert Jack Ridenour, and documents provided by Tesla reflecting the specifications for the subject battery.

Dr. White attended the inspection of the subject damaged battery conducted by Mr. Arora and took his own pictures during that inspection. DE 31-2 at 11. At that inspection, Dr. White took possession of some of those battery cells which had been damaged in the subject incident. DE 31-2 at 16-17.

Dr. White's original report considered the specifications for individual lithium-ion battery cells different from the one used in the subject vehicle. However, as Dr. White's deposition revealed, subsequent to his report Dr. White considered the actual specifications for the battery used in the subject vehicle which reflected thin cell walls below the 0.20mm that Dr. White believes is necessary to prevent runaway thermal propagation.

As reflected in Tesla's expert Mr. Arora's report, "[t]he data sheet for the Panasonic cells used in the subject battery pack indicates that the cell can thickness has a specification of 0.19 +/- 0.04mm." ECF No. 31-3 at 30. Dr. White noted in his deposition, that with the plus or minus tolerance of 0.04mm on the cell wall thickness, "if you look at the value that's stated and use the confidence interval that's stated on the thickness of the cell in the BB can, it can be as thin as 150 microns or .010 [sic] mm." ECF No. 31-2 at 99.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Thus, notwithstanding Dr. White's original perusal of specifications for a different battery system, after he reviewed the correct specifications for the "BB" battery, his "point is that even the BB cell wall can be considered to be thin." Id.

Dr. White's evaluation of the fire-retardant properties of the subject battery included information which established that, "in some of the materials that were provided, we found evidence that these intumescent materials, fire-retardant materials were being tested by the folks there at Tesla and could have been included in the pack that is the subject of the investigation, but they were not for reasons that really aren't clear . . . ." DE 31-2 at 117. The specifications for the subject battery system revealed, however, that no such fire-retardant material was used between the cells.

Dr. White described the process of thermal runaway propagation as follows:

> Thermal runaway of a lithium-ion cell in a battery pack of lithium-ion cells can cause thermal runaway propagation, which means that the adjacent cells can also go into thermal runaway due to the heat released by the cell in thermal runaway. This can lead to thermal runaway of the other cells in the battery pack with catastrophic results. This sequence of multiple battery cells going into thermal runaway is referred to as thermal runaway propagation.

> Thermal runaway and thermal runaway propagation can also be caused by crushing a lithium-ion cell, which can occur due to an electric vehicle crash for example. Again, once one lithium-ion cell goes into thermal runaway, the heat released can cause thermal runaway propagation in the battery pack, which causes explosions and fires.

DE 31-1 at 9-10.

20

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STANDARD OR SCOPE OF REVIEW

The standard or scope of review of a district court's exclusion of expert testimony under *Daubert* is abuse of discretion, tempered with recognition that doubts regarding the admissibility of such testimony should be resolved in favor of admission of the evidence:

> We review that ruling [striking expert testimony under *Daubert]* for abuse of discretion. See, e.g., *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). Under Rule 702, a district court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Daubert*, 509 U.S. at 596. This gatekeeping role, however, "is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999) (citing *Daubert,* 509 U.S. at 596). In evaluating the reliability of scientific expert testimony, a district court "must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue." *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004) (en banc) (internal quotation marks and ellipsis omitted).

*United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

The Final Judgment should be reversed and this matter should be remanded for a new trial on all issues, including the issues of Tesla's liability under Florida

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

strict product liability law for marketing a car with a defective battery. Plaintiff presented expert testimony of two defects in the battery; 1) the lack of intumescent fire-retardant material between the cells and 2) a battery designed with individual cell walls that were too thin to restrain it from thermal runaway propagation upon a severe impact. Under *Daubert*, the opinions of Dr. Ralph White should have been deemed admissible and, therefore, sufficient to defeat summary judgment on the battery defect claim.

The district court erroneously excluded from evidence Dr. White's opinion that the fatal fire was caused by runaway thermal propagation that would not have occurred if the battery had been designed with intumescent fire-retardant material between the cells. Dr. White testified that use of the intumescent fire-retardant material "would tend to prevent the thermal runaway propagation from cell-to-cell" and stated that, "[i]f there was fire-retardant material then that *probably would not have happened* . . . ." DE 31-2 at 119.

Dr. White's testimony was supported by Tesla's own patent relating to its battery pacts entitled "Cell Thermal Runaway Propagation Resistance Using Dual Intumescent Material Layers." DE 39-820. That patent states that it provides "a means for inhibiting the propagation of thermal runaway within a plurality of batteries," using the very intumescent fire-retardant material that Dr. White testified would have prevented the fatal fire.

The question of proximate causation in a product liability case is a question of fact for the jury unless no reasonable jury could determine that the defect was not the cause of plaintiff's harm. Expert testimony is required to support such claim, but that testimony need not rule out any possibility of other causes of harm. Instead, the standard is whether the defect more likely than not cause the harm. Here, Dr. White testified that, had Tesla used intumescent material thermal runaway propagation "*probably* would not happen." (Emphasis added). That was sufficient to withstand a *Daubert* challenge and the motion for summary judgment.

The district court also erroneously excluded Dr. White's testimony about battery cell wall thickness. Dr. White opined that the thickness of the cell walls could be no less than .020 mm (200 microns). Although the thickness of the single cell wall measured by Tesla's expert measured at .021mm, there was no evidence that the cell Defendant's expert measured was typical and Tesla's battery supplier's investigations recognized that the cells have thickness that can range from a low of 0.15 to 0.23mm. that is more than twenty percent lower than Dr. White's opinion regarding an appropriate thickness.

This Court should reverse the district court's findings that Dr. White's opinions were inadmissible and reverse the summary judgment based thereon.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

**ARGUMENT**

**I.**

### THE DISTRICT COURT ERRONEOUSLY EXCLUDED DR. WHITE'S OPINION THAT THE FATAL FIRE WAS CAUSED BY LACK OF INTUMESCENT FIRE-RETARDANT MATERIAL AND ERRONEOUSLY ENTERED SUMMARY JUDGMENT IN FAVOR OF TESLA ON THAT CLAIM

#### A. Introduction:

The judgment on appeal should be reversed because the district court erroneously excluded from evidence the opinion of Plaintiff's expert Dr. White that the fire was caused by runaway thermal propagation that probably would have not occurred if the battery had been designed with intumescent fire-retardant material between the cells. As a result of that error in striking Dr. White's causation opinion, the district court erroneously entered partial summary judgment against Plaintiff on his defective battery claim. There was sufficient evidence in the record supporting the proposition that the absence of intumescent material was the cause of thermal runaway propagation which resulted in the fire that killed Barrett Riley. The district court erroneously failed to consider all inferences drawn from the underlying facts in the light most favorable to the Plaintiff and failed to resolve all reasonable doubts against the moving party, Tesla, as is required under the applicable standard. *See Davis v. Williams* 451 F.3d. 759, 763(11th Cir. 2006).

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## B. Standard for Excluding Expert Testimony Under *Daubert*:

The modern standards for admissibility of expert testimony in federal court arose from the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Those standards were later codified in Fed. R. Evid. 702. That rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 has a "liberal policy of admissibility." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 738 (3d Cir. 1994). Under it, "the process or technique the expert used in formulating the opinion [must be] reliable." *Id.* at 741. "[T]he standard for determining reliability is not that high." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (internal quotation marks and citation omitted).

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

This Circuit and all federal courts follow the rule that *Daubert* is not to be used to deprive the jury of helpful expert opinions based on a strict application of exclusionary standards:

> An expert's testimony is admissible if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand is assigned to the district court." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993)). "The admissibility standard is a liberal one, and . . . the rejection of expert testimony is the exception rather than the rule." *Frazier*, 387 F.3d at 1293-94.

*United States v. Williams*, 684 F. App'x 767, 779 (11th Cir. 2017) (emphasis added).

As noted, the law is the same throughout our federal system: "It is a well accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)." *Nimely v. City of N.Y.*, 414 F.3d 381 395-96 (2d Cir. 2005).

The burden of proof on a *Daubert* issue lies with the proponent of the expert's testimony. "The proponent need not prove that the expert's testimony is correct, but [he or] she must prove by a preponderance of the evidence that the testimony is

reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). *Moore*, 151 F.3d at 276.

In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the Supreme Court concluded that a district court may consider one or more of the specific *Daubert* factors when doing so will help determine the reliability of the expert's testimony. *Id.* at 151. But, the test of reliability is "flexible," and *Daubert*'s list of specific factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination. *Id.* at 142 (*citing General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)). Thus, whether *Daubert's* suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. *Id.* at 151-52; *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 311-12 (5th Cir. 1999) ("In the vast majority of cases, the district court first should decide whether the factors mentioned in Daubert are appropriate.").

Where expert testimony is on the borderline of admissibility, the courts should give the benefit of the doubt to the proponent of the testimony and allow the jury to determine its value. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

First, Plaintiff's battery expert, Ralph White, presented testimony that the fire that consumed the car in question resulted from thermal runaway propagation in the lithium-ion battery pack. Dr. White testified that, in the pictures taken by Tesla's expert Ashish Aurora, "you can see very clearly from looking at the [battery] modules that were involved in the crash and the thermal runaway propagation in those modules." DE 31-2 at 134. In addition, Dr. White describes a figure shown on page 16 of his report where "you can see that thermal runaway propagation occurred. The cells that are on the left of that picture . . . were affected by thermal runaway propagation. They were not crushed." *Id*. at 161.

The district court erroneously failed to consider Dr. White's deposition testimony that, if the fire-retardant intumescent material had been used between the cells of the battery pack, the thermal runaway propagation "would probably not happen." DE 31-2 at 120. His full explanation of the causation mechanism was as follows:

> Q. What would the intumescent fire-retardant material actually do?
> A. Well, *it would tend to prevent the thermal runaway propagation from cell-to-cell*. It would act as a fire retardant. What happens when we have thermal runaway out of an individual cell is oftentimes the cell will emit or eject the material that's inside the cell, including the electrolyte. And the electrolyte oftentimes because of the temperature and the possibility of a spark nearby will flame up.

And so the flaming electrolyte then causes the cells nearby to heat up rapidly and so forth, and we have this propagation problem.

*If there was fire-retardant material, then that would probably not happen*, and I think that's part of what they discovered by in 2011 when they were testing some of these materials.

DE 31-2 at 119 (emphasis added).

Dr. White's testimony is supported by Tesla's own patent relating to the use of intumescent material in battery packs. Before it sold the Model S to James Riley, Tesla had applied for and obtained a patent for a design to mitigate or prevent thermal runaway. Tesla is the assignee of U.S. Patent No. 7,763,381 B2 (issued July 27, 2010), titled "Cell Thermal Runaway Propagation Resistance Using Dual Intumescent Material Layers." DE 39-8 at 20. The Patent states that it provides "a means for inhibiting the propagation of thermal runaway within a plurality of batteries." DE 39-8 at 20.

As Tesla's inventors put it, "the intent of the present invention is to minimize the effects of thermal runaway on cell s that are adjacent to the affected cell, thereby resisting thermal runaway propagation." *Id*. Further, "[t]he inventors have found that use of an intumescent material applied directly to a cell as described [in the Patent] . . . provides significant resistance to the propagation of a thermal runaway event." Id. at 30, ¶ 35. The Patent then discusses specific testing comparing the resistance to thermal runaway propagation of cells that had the intumescent coating with cells that

did not have it: the cells with the coating successfully resisted thermal runaway, while those without it did not. *See id*. at 31. In short, Tesla's own Patent supports Dr. White's testimony that intumescent fire retardant material between battery cells can prevent the very sort of thermal runaway propagation that killed Barrett Riley.

Causation is a classic "jury issue." Ultimately, the question of proximate cause is for the jury unless reasonable persons could not differ in their determination of the question. *LeMaster v. Glock, Inc*., 610 So. 2d 1336, 1338 (Fla. 1st DCA 1992) (noting that where questions of negligence are close, any doubt should always be resolved in favor of a jury trial) (citations omitted). The circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited. *Id.*

As correctly noted by the district court in its order granting Tesla's motion for reconsideration, "(t)o prove causation under a strict products liability theory or a negligent design theory, a plaintiff must demonstrate that the defective or unreasonably dangerous product 'proximately caused his injury'". DE 135 at 2. *See Pierre v. Intuitive Surgical, Inc.* 854 F. App'x 316, 319(11th Cir. 2021)(The question of proximate cause is for the jury to determine unless no reasonable person could find for the nonmoving party). *Lemaster v. Glock, Inc* 610 So. 2d 1336, 1338(Fla. 1st DCA 1992) (Where questions of actionable negligence are close, any doubt should be always resolved in favor of a jury trial).

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Although, under Florida law, a plaintiff in a product liability case must establish more than the possibility that a defect caused the claimed injury; the Plaintiff need only tip the scales in his or her favor by the greater weight of the evidence on that issue. "Florida has adopted a preponderance standard for causation in both negligence and strict liability actions; a mere possibility of causation is not enough." *Pierre v. Intuitive Surgical, Inc,* 854 F. App'x 316 at 319. That burden of tipping the scale by preponderance is not a heavy one, precluding jury consideration of causation only where the Plaintiff's proof consists of "pure speculation or conjecture, or the probabilities are at best evenly balanced." *Id*.

The district court's order granting Tesla's motion for reconsideration acknowledges that "Dr. White testified that had Tesla used intumescent material thermal runaway propagation 'would ***probably not happen***.'" DE 135 at 3 (emphasis added). However, even though that testimony of Dr. White was not vouched in terms of mere "possibility" but probability, the district court concluded that "Dr. White's testimony as to probabilities is insufficient to support the element of causation for counts II concedes strict liability and III (negligence) on the battery claim." DE 135 at 3.

Dr. White's testimony that the fire caused by thermal runaway propagation "would probably not happen" was just the same as testimony that, in the absence of the intumescent material, the thermal runaway propagation and resulting fire

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*probably would happen.* The preponderance of the evidence standard necessary to establish proximate causation under Florida Law only requires the plaintiff to tip the scale slightly beyond equipoise. "To prove causation under Florida law, which applies to . . . strict liability and negligence claims, the plaintiff must introduce evidence that 'it is *more likely than not* that the conduct of the defendant was a substantial factor in bringing about the result.'" *Arevalo v. Mentor Worldwide LLC,* No. 21-11768; 2022 U.S. App. LEXIS 30922 at 20 (11th Cir. Nov. 8, 2022) (*Guinn v. AstraZeneca Pharms.,* 602 F.3d 1245, 1256 (11th Cir. 2010).

Dr. White's testimony that, in the absence of the subject defect, thermal runaway propagation "would probably not happen" is just the same as saying that the lack of intumescent fire retardant material "more likely than not cause the injury." *See In re 3M Combat Arms Ear Plugs Prods. Liab. Litig,* 2021 U.S. Dist. LEXIS 125752 at 11(N.D. Fla. Apr 8, 2021) (in cases where expert . . . testimony is required to prove causation, the expert testimony 'must demonstrate that the defendant's product "probably" or "more likely than not" caused the injury, rather than "might have," "could have," or "possibly did" and 'must be based on a reasonable degree of . . .certainty according to the facts of the case, as opposed to unsupported speculation.'")

"As to the element of causation, 'Florida Courts follow the more likely than not standard of causation and require proof that the negligence *probably caused* the

plaintiff's injury.'" *Cantore v. W. Boca Med. Ctr.,* 254 So. 3d 256, 260 (Fla. 2018).

This court has cited *Cantore* with approval for that proposition, thereby establishing

that "the more likely than not standard" is the same as the "probably caused

standard". *See Prieto v. Total Renal Care, Inc,* 843 F. App'x 218 at 224 (11th Cir.

2021). "[I]n negligence actions the courts follow the more likely than not standard

of causation, *Gooding v. Univ. Hosp. Bldg., Inc,* 445 So. 2d 1015, 1018 (Fla. 1984),

meaning that the defendant's negligence 'probably caused' the plaintiff's injury, *Cox

v. St. Josephs Hosp.,* 71 So. 3d. 795 (Fla. 2011)." *Aycock v. R.J. Reynolds Tobacco

Co.* 769 F.3d 1063, 1069 (11th Cir. 2014). Because Plaintiff' satisfied the applicable

causation of standard with Dr. White's testimony about the probability—not mere

possibility—of causation, the order striking his testimony and entering summary

judgment on that claim was erroneous and should be reversed.

### C. Dr. White's Supplementary Declaration Incorrectly Stricken:

Additional evidence that Dr. White's causation opinion on the lack of fire-

retardant material was not speculative is contained in Dr. White's supplemental

declaration filed in response to Tesla's Daubert motion. DE 42-2. That declaration

established in pertinent part that Dr. White's causation opinions were not

speculative, as follows:

> Although I may have used language in expressing my opinions
> in my report and deposition that seemed inconclusive, such as that word
> like "maybe" and "possible," at the time of my report and deposition,
> and at the present time, my opinions that the thin cell walls and lack of
> fire retardant material resulted in the runaway thermal propagation *are*

*opinions that I hold within a reasonable degree of engineering certainty*.

DE 42-2 at 5 (emphasis added).

The district court erroneously excluded that portion of Dr. White's declaration because it was not a new opinion, did not provide new support for his previously-expressed opinions, and was information that would be admissible at a *Daubert* evidentiary hearing. Courts from across America recognize that a party whose expert witnesses have been challenged under *Daubert* have the right and obligation to present supplemental affidavits and other evidence to withstand *Daubert* challenges.

In *Simmerman v. Ace Bayou Corp.*, No. 5:14-382-DCR; 2016 U.S. Dist. LEXIS 15365 (E.D. Ky. Feb. 9, 2016), the court denied a motion to strike a supplemental affidavit from an expert, Dr. Miller, whose opinions had been challenged by the plaintiff under *Daubert*. The defendant provided Dr. Miller's expert disclosures on October 5, 2015, the deadline under the court's amended scheduling order. *Id*. at *8. Ten days later, the Plaintiffs deposed Dr. Miller and thereafter moved to exclude his testimony under Fed. R. Evid. 702 challenging his qualifications to render the opinions that supported defendant's position that the product in question was not defective. *Id*. at *12. In response to that motion, the defendants "attached a 'supplemental report' by Dr. Miller . . . [in which] Dr. Miller further elaborates on his qualifications and responds to the plaintiffs' critique of his anthropometric analysis. . . . Primarily, Dr. Miller explains his reasons for relying

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

on two anthropometric studies. He also lists other anthropometric studies he has reviewed and explains why those are less applicable here." *Id*.

The plaintiff in *Simmerman* moved to strike Dr. Miller's supplemental report as untimely, citing Fed. R. Civ. P. 26 and 37. *Id*. The court denied plaintiff's motion to strike Dr. Miller's second report, accepting the defendant's argument that—where the opposing party files a motion to exclude the expert's testimony after the deadline for supplementing expert reports had expired—the proponent of the expert still is entitled to offer evidence to explain the sufficiency of the expert's qualifications and methodology. The court in denying the motion to strike Dr. Miller's supplemental report, explained as follows:

> According to the defendants, Dr. Miller's second report does not contain "new [or] previously undisclosed" information and, therefore, is not subject to the requirements of <u>Rule 26(e)</u>. *Id*. Instead of retaining an expert to rebut Dr. Miller's conclusions, the plaintiffs chose to critique his findings for the first time through their *Daubert* motion filed November 1, 2015, after the supplementation and discovery deadlines had passed. Thus, the ***defendants contend that Dr. Miller is entitled to an opportunity to rebut the plaintiffs' arguments. Further, they assert that the supplemental report only contains information Dr. Miller would have offered at a formal Daubert hearing***.

> When faced with similar facts, several courts have agreed with the defendants' interpretation of Rules 37 and 26. In *Fisher v. Clark Aiken Matik, Inc.*, No. 3: CV-99-1976, 2005 U.S. Dist. LEXIS 46679, 2005 WL 6182824, at *1 (M.D. Pa. Sept. 26, 2005), the plaintiff's expert witness filed a supplemental report in response to the defendant's *Daubert* motion. In the response, ***he explained his methodology for opinions expressed in his original report***. *Id*. Observing that the report obviated the need for a *Daubert* hearing, the United States District Court for the Middle District of Pennsylvania denied the defendant's motion to strike, holding that "***the rules do not***

35

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*require a party to satisfy Daubert in the required pretrial disclosures*." *Id.*

In *GED Integrated Solutions, Inc. v. Durotech Int'l, Inc.*, No. 5: 06CV1327, 2009 U.S. Dist. LEXIS 6716, 2009 WL 233872, at \*2 (N.D. Ohio, Jan. 30, 2009), the defendant questioned an expert's ability to perform a finite element analysis. In response to the defendant's motion for summary judgment, the expert filed a supplemental report providing a detailed definition of finite element analysis, his qualifications for performing such an analysis, and the data underlying his analysis. *Id.* Like *Fisher*, the United States District Court for the Northern District of Ohio denied the defendant's motion to strike the supplemental report. *Id.* In reaching it decision, the court reasoned that "*the information contained in the report is nothing more than what the Court would have learned had it held a formal hearing on this Daubert challenge*." *Id.*

*Here, Dr. Miller's supplemental report outlines his qualifications* for analyzing anthropometric data and opining on consumer safety matters. [Record No. 133-2] *It also explains his methodology* for selecting the anthropometric statistics upon which his original report relied. *Id.* In short, *the supplemental report does not contain any new theories. Instead, it simply explains Dr. Miller's methodology and attempts to rebut the arguments made by the plaintiffs in their Daubert motion.*

\* \* \*

Therefore, the plaintiffs' motion to strike Dr. Miller's supplemental report will be denied, and the contents of that report will be considered in addressing the plaintiffs' motion to exclude his testimony.

*Id.* at \*\*14-17 (emphasis added).

Another case recognizing that an expert's affidavit or declaration submitted in response to an opponent's *Daubert* motion which explains and amplifies the bases for the expert's report and deposition testimony should be considered and not

stricken as untimely is *Pritchard v. Dow Agro Servs.*, 263 F.R.D. 277 (W.D. Pa. Nov. 12, 2009). In that case, the plaintiff had submitted reports of experts including Dr. Omalu. As in this case, the defendants in *Pritchard* moved to exclude Dr. Omalu's testimony under *Daubert*, to which the plaintiff responded with a supplemental declaration of Dr. Omalu which the defendants attempted to strike.

In denying that motion to strike the declaration of Dr. Omalu, the court held as follows:

> On July 22, 2009, Defendants filed their Motion To Exclude the Expert Causation Testimony of Dr. Omalu (Docket No. 127), along with their Brief in Support of said Motion. (Docket No. 128). ***Defendants maintain that Dr. Omalu is not qualified to render the opinions in his report***. (*Id.*). ***They also argue that Dr. Omalu's opinions regarding both general causation and specific causation do not meet the reliability standards set forth in Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and incorporated into Federal Rule of Evidence 702. In support of their motion, Defendants attached voluminous exhibits including the expert reports of Marshall A. Lichtman, M.D., Seymour Grufferman, M.D. and Michael Greenberg, M.D. (Docket Nos. 128-4, 128-5, 128-6).

> ***In response to Defendant's Motion to Exclude***, Plaintiffs filed their Brief in Opposition on August 28, 2009. (Docket No. 135). Plaintiffs argue that each of Defendants' objections are lacking in merit and that Dr. Omalu's testimony should be admitted in this action. (Docket No. 135 at 3). ***Plaintiffs also attached the "Declaration of Bennet I. Omalu, MD, MBA, MPH" in support of their response***. (*Id.*).

> Further, Plaintiffs' response to Defendants' *Daubert* motion and the declaration of Dr. Omalu plainly state that the purpose of the declaration is to rebut Defendants' expert reports and testimony of their experts. *See* Docket No. 135 (emphases added)("***By way of rebuttal*** to the Defense experts' opinions on the epidemiology, ***Dr. Omalu has submitted a Declaration that amplifies his previously-stated opinion***

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

that an association between chlorpyrifos and NHL is to be found in the published literature."); *see also* Docket No. 135-2 at 1 ("I make this Declaration in support of my June 1, 2009 Medico-Legal Report concerning Robert T. Pritchard, Sr. …, by way of rebuttal to the reports and testimony of Marshall Lichtman, M.D., Seymour Grufferman, M.D. and Michael I. Greenberg, M.D."). More importantly, counsel were also advised at the outset of this case and upon the finalization of the Fourth Amended Case Management Order that the Court would permit live testimony of experts at any *Daubert* hearing. (Docket No. 142, Trans. Hr'g 9/22/09 at 25). Instead of proceeding in this fashion, ***Plaintiffs have submitted the declaration of Dr. Omalu for the purpose of rebutting the assertions of the defense experts regarding Dr. Omalu's opinions***. *See Fisher v. Clark Aiken Matik, Inc.*, Civ. A. No. 99-1976, 2005 WL 6182824, at *1 (M.D. Pa. Sept. 26, 2005)(holding that "[t]here is neither a violation of the applicable discovery rules nor sanctionable conduct in the submission of [a supplemental expert report] to rebut the *Daubert* motion."). ***The Court fails to see how the facts set forth in the declaration would not be elicited from Dr. Omalu on either cross-examination or redirect had he testified live at the Daubert hearing.*** Accordingly, the Court will consider the Plaintiffs' submission as rebuttal to the opinions of Defendants' experts.

*Id.* at 281-84 (emphasis added).

Yet another case recognizing the propriety of allowing supplemental declarations to counter a motion to exclude the testimony of experts is *N.J. Dep't. of Envt'l Prot. v. Amarada Hess Corp.*, No. 15-6468 (FLW); 2019 U.S. Dist. LEXIS 146336 (D.N.J. Aug. 28, 2019), which states as follows:

> As an initial matter, ***Getty Defendants argue that Brown's supplemental declaration, attached as exhibits to Plaintiffs' opposition briefs, is an improper supplementation of Brown's expert report.***

\* \* \*

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Courts, therefore, have "'repeatedly rejected attempts to...'supplement[t]' an expert report with a 'new and improved' expert report'"in an opposition brief. 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2049.1 (3d ed. 2019)

\* \* \*

However, although a declaration should be stricken if it contains new opinions or information which is contradictory to that set forth in the expert report, *see Stein v. Foamex Intern., Inc.*, No. 00-2356, 2001 U.S. Dist. LEXIS 12211, 2001 WL 936566 (E.D. Pa. 2001), *it need not be stricken if it is merely "an elaboration of and consistent with an opinion/issue previously addressed" in the expert report. Pritchard*, 263 F.R.D. at 284-85 (citation omitted). The Third Circuit has noted that there is no "bright line rule" whereby every expert opinion "must be included in a preliminary report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006)(finding no error in lower court's admission of expert rebuttal testimony exceeding scope of expert's original report). While the applicable case law prohibits an expert from using rebuttal as a "do-over" of an original report, courts have refrained from "automatically exclud[ing] anything an expert could have included in his or her original report." *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).

\* \* \*

Thus, *because Brown does not offer any new opinions based on the updated data, but merely provides an explanation as to why the data did not impact his analysis, the Brown Supp. Declaration is not an improper supplementation of Brown's expert report. See Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 U.S. Dist. LEXIS 138041, 2013 WL 5410531, at \*2 (D.N.J. Sept. 26, 2013) (refusing to strike expert's "rebuttal opinions" as improper, which merely "rechecked" his analysis...[and] concluded that his analysis...was "unchanged"); *Barnes v. Century Aluminum Co.*, No. 05-62, 2013 U.S. Dist. LEXIS 65361, 2013 WL 1906283, at \*6 (D.V.I. May 8, 2013) (*refusing to strike expert's declaration that was "a clarification of [his] opinions in response to the defendants' Daubert motions...[and] does not change any of his opinions in the declaration or provide any new*

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

opinions"); *Pritchard v. Dow Agro Scis.*, 263 F.R.D. at 285; *see also, Reichhold, Inc. v. U.S. Metals Ref. Co.*, No. 03-453, 2007 U.S. Dist. LEXIS 34284, 2007 WL 1428559, at \*13 (D.N.J. May 10, 2007) (reversing magistrate judge's ruling denying plaintiff's use of supplemental report, explaining that the report "address[ed] an important issue on which [expert] did not have the data to opine at the time of his original report").

* * *

The Court will, therefore, not strike the Brown Supp. Declaration.

*Id.* at \*\*12-18 (emphasis added).

As stated in paragraph 4 of Dr. White's declaration, it "***does not contain any new opinions or any new bases for the opinions that [he] expressed in [his] report*** filed in this case and in [his] deposition. The purpose of this declaration is to provide an understanding for the ***reliability of*** the methodology used at arriving at [his] previously-expressed opinions." DE 42-2 at 3 (emphasis added).

This Court should reverse the exclusion of Dr. White's declaration that his opinions were not speculative but were opinions he arrived at "within a reasonable degree of engineering certainty." It was not until the *Daubert* motion challenging the lack of certainty of his opinions that there was any occasion for him to use such language. There is no requirement in the law that an expert opinion disclosed in discovery be phrased in the precise form for evidentiary admissibility. Therefore, the district court's finding that his causation opinions were speculative should be reversed.

## II.

### THE DISTRICT COURT ERRONEOUSLY
### EXCLUDED DR. WHITE'S TESTIMONY
### ABOUT BATTERY CELL WALL THICKNESS

#### A. Introduction:

Tesla successfully moved to exclude the opinion testimony of Dr. White that

the cell wall thickness in the subject battery was too thin, leading to an increased

risk in runaway thermal propagation. The basis for the district court's ruling striking

Dr. White's opinions on that subject and granting summary judgment on the battery

defect claim was as follows:

> Dr. White initially opined on the thickness of the battery cell walls
> based on his assessment of a totally different battery (the "BA" version)
> than the battery actually used in the Model S (the "BB" version). White
> Dep. 97:5-98:25. Nevertheless, when questioned about the different
> cells, Dr. White opined that "it is possible that the BB cells are also
> cells that would be considered to have a thin wall if you look at the
> variation in the thickness of the can walls." *Id.* 100:19-24. Moreover,
> Dr. White did not specify what would have been "strong enough" or
> "thick enough" to prevent the fire and was unaware of any standards,
> guidelines, or peer reviewed documentation concerning the thickness
> of the cylinder wall. Id. 102:2-12, 104:18-22, 105:17-25, 106:21-107:4.
> Additionally, although Dr. White recognized that "determin[ing] the
> thickness of the can walls in the [Model S] battery" would require
> "measuring the wall thickness of perhaps a major sample of the 7,000
> cells or whatever might remain in order to determine what the actual
> average cell wall thickness is and what the center deviation is," Dr.
> White did not examine the battery cell walls of the Model S or
> investigate further. *Id.* 100:25-101:25. Rather, Dr. White based his
> opinion on "common knowledge" that the Panasonic battery was too
> thin. *Id.* 100:13-24.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Dr. White's testimony was also framed as "probabilities" as he did not have a specific measure of how thick the battery cells should be or know of tests to determine how thick the cell wall would have to be to prevent side rupturing. *Id*. 108:19-109:2. During continued questioning, Dr. White ultimately testified that the battery cell thickness should have been greater than 0.2mm. *Id*. 108:16-109:2; see also (ECF No. 31-1 at 6, 20) (opining that battery cells were constructed with thinner can walls). Tesla rebutted Dr. White's testimony with a CT scan (conducted by Tesla's expert) of an undamaged cell from the vehicle battery pack that confirmed the thickness of the wall to be 0.21mm, which met the standard suggested by Dr. White. (ECF No. 31 at 16). Against this factual backdrop, Dr. White's opinions regarding the thickness of the cell walls are unreliable and irrelevant based on inaccuracies in his methodology and insufficient information. *See, e.g., In re Denture Cream Prods. Liab. Litig.*, 795 F. Supp. 2d at 1363 (excluding as unreliable expert opinion based on inaccurate factual premise); *Cook*, 402 F.3d at 1111 (affirming exclusion of expert opinion that lacked factual foundation). Accordingly, these statements are inadmissible as a basis for Dr. White's opinion that the fire resulted from thermal runaway propagation.

DE 117 at 29-30.

Contrary to the district court's finding concerning the basis for Dr. White's testimony on cell wall thickness, his testimony was based upon sufficient facts and data. His initial review of the incorrect model of battery was cured by other evidence he considered which confirmed his opinion that the cell walls were too thin.

### B. Bases for Dr. White's Opinion That Cell Walls Were Too Thin:

There was sufficient foundation for Dr. White's opinion that the fatal fire was caused by thermal runaway propagation as a result of the battery cell walls being too thin. Dr. White's personal observation of the vehicle inspection and review of the photographs taken at that inspection support his expert opinion that the battery

42

module experienced runaway thermal propagation. For example, Dr. White's report contains a photograph of "four destroyed cells" from the subject battery pack which demonstrate both that the cause of their destruction was thermal runaway propagation resulting from the too-thin battery cell wall:

> Figure 10 shows four destroyed cells from the 2014 Tesla Model S, P85D damaged battery pack. Note that one of the cells was destroyed by bursting along the length of the cell, which was due to a side wall rupture due to the thin wall of the steel battery cell can. The destroyed internal components (i.e., the so-called jelly roll) can be seen protruding from the cell. *The thin walls of the battery cell cans used in the battery pack undoubtedly contributed to the thermal runaway propagation that occurred in the battery pack* because the heat released through the broken side wall of the battery cell provided direct heating of the cell next to the cell that experienced the side wall rupture.

DE 31-1 at 19 (emphasis added). Defendant's criticism of Dr. White's opinions as being somewhat equivocal is refuted by the above-emphasized portion of his report in which he unequivocally states that defects in the battery system "undoubtedly contributed" to the fatal fire.

The battery specifications provided by Tesla for these Panasonic batteries demonstrates that the cell walls were of a certain thickness and that the subject fire-retardant material was not included in the design. The examination of the damaged battery pack, combined with Dr. White's five decades of experience in battery design and technology, that "confirm[ed] that it was cell-to-cell thermal runaway propagation within modules" that caused the fatal fire and that the fire perhaps

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

"could have been avoided had the modules been designed to prevent cell-to-cell thermal runaway propagation." DE 31-2 at 135.

This Court should reject Defendant's argument that Dr. White's opinions on this subject were correctly excluded because he commenced his search by viewing the specifications for a different battery (with cells described as the "BA" version) than that actually used in this vehicle (described as the "BB" version).

Defendant's motion incorrectly overlooked other information upon which Dr. White relied to determine the thickness in the cell walls utilized by Tesla. As noted in the detailed analysis and criticism of Dr. White's report contained the report prepared by the Defendant's expert Ashish Arora, "[t]he data sheet for the Panasonic cells used in the subject battery pack indicates that the cell can thickness has a specification of 0.19 +/- 0.04mm." DE 31-3 at 30. Thus, under the specification used by Tesla itself, with the accepted tolerance of plus or minus .04mm, the prescribed thickness for the cell wall can range from a low of 0.15 to 0.23.

Assuming that Tesla complied with its own battery supplier's specifications, the cell wall thickness in the subject batteries could acceptably be as low as 0.15mm, a more than 21% reduction from Tesla's own aspirational measurement of .19 mm, or a full 25% thinner than Dr. White's opinion concerning an appropriate thickness.

Although the thickness of the cell wall of the single cell (out of more than 7,000 in the subject battery pack) measured by Defendant's expert measured at 021

mm, there is no evidence that the thickness of that cell was typical. Assumedly Tesla uses its own supplier's (Panasonic) specification which call for thinner cell walls than the minimum oi 200 microns Dr. White opined would have prevented the fatal fire.

Dr. White explained in his deposition that "[once] he learned that it was the BB cell and looked at the specification of the thickness . . . it's possible that the BB cells are also cells that would be considered to have a thin wall if you look at the variation of the thickness of the can walls." ECF No. 31-2 at 101.2 His own professional opinion is that the cell walls should be greater than 0.20mm. He testified as follows:

> Q. Okay. Do you have an opinion as to what the thickness of the battery cells should have been to avoid the fire that occurred in this crash?
>
> A. Well, I would say probably greater than 200 microns. I think that was something that may have been used typically maybe 210 microns, somewhere in that range. Something on the order of 225 microns. I don't have any specific number [above the minimum of 200 microns]. I don't know if there's been sufficient tests to determine how thick the cell wall would have to be to prevent sidewall rupturing.
>
> All I know is it did occur at 127 microns according to the tests done by Dr. Darcy at NASA.

DE 31-2 at 109-110 (emphasis added).

Thus, it is irrelevant that Dr. White initially reviewed specifications for a different battery cell, because Tesla's actual specifications for the BB battery cell

used in this case establishes that the design of the cell walls is thinner than the minimum he opined would be necessary to prevent the subject fire. The first basis for Dr. White's opinion that the battery system experienced thermal runaway propagation is his own observation to the damage to the battery pack made at the vehicle inspection conducted by Defendant's expert, which Dr. White observed. His deposition included testimony that "you can see very clearly in Module 12 the bottom of the picture in the center has some runaway propagation. And other pictures show that even more clearly. . . . You can look at the figure that we looked at earlier on page 16 of my report, and you can see that thermal runaway propagation occurred." ECF No. 31-2 at 162.

Dr. White has the experience to support the testimony that "the cells were affected by thermal runaway propagation. They were not crushed." ECF No. 31-2 at 162. Although Defendant's expert Mr. Arora opined that "there was no thermal runaway propagation," he does agree that "some cells went into thermal runaway due to multiple impacts in the same region of the vehicle during the accident." ECF No. 31-3 at 36-37.

## CONCLUSION

WHEREFORE, the district court having erroneously misapplied the legal standard for admissibility of expert opinion under *Daubert*; there being sufficient basis for admissibility of Dr. White's opinion that the absence of fire-retardant

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

intumescent material between the battery cells caused the fatal fire, as illustrated by Tesla's own patent on the subject; the district court having erroneously excluded Dr. White's opinions concerning the thinness of the battery cell walls as a causal factor in the runaway thermal propagation that killed Barret Riley; the summary judgment on Plaintiff's defective battery claim should be reversed and this matter should be remanded for a new trial on all issues.

Respectfully submitted,

| | |
|---|---|
| ROY D. WASSON | CURTIS B. MINER |
| WASSON & ASSOCIATES, CHARTERED | THOMAS KROEGER |
| Courthouse Plaza—Suite 600 | COLSON HICKS EIDSON, P.A |
| 28 West Flagler Street | 255 Alhambra Circle, Penthouse |
| Miami, FL 33130 | Coral Gables, FL 33134 |
| (305) 372-5220 Telephone | (305) 476-7400 Telephone |
| roy@wassonandassociates.com | curt@colson.com |
| e-service@wassonandassociates.com | tom@colson.com |

By:   *s/Roy D. Wasson*
ROY D. WASSON
Florida Bar No. 332070

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 12,318 words.

By:   *s/Roy D. Wasson*
ROY D. WASSON
Florida Bar No. 332070

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing and an original and six paper copies have been dispatched to the clerk of court for delivery within three days on December 27, 2022.

By:     *s/Roy D. Wasson*
ROY D. WASSON
Florida Bar No. 332070

.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## SERVICELIST

### Counsel for Appellant
Lewis S. Eidson
Patrick Shanan Montoya
Denise Helen Georges
Curtis Miner
Thomas A. Kroeger
Colson Hicks Eidson, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 476-7400 Telephone
mike@colson.com
patrick@colson.com
denise@colson.com
curt@colson.com
tom@colson.com

Roy D. Wasson
Wasson & Associates, Chartered
28 West Flagler Street
Suite 600
Miami, FL 33130
(305) 372-5220 Telephone
roy@wassonandassociates.com
e-service@wassonandassociates.com

### Counsel for Appellee
Robert J. Rudock
Vincent Galvin
Whitney V. Cruz
Wendy Frank Lumish
Bowman and Brooke, LLP
Two Alhabra Plaza, Suite 800
Coral Gables, FL 33134
(305) 995-5600 Telephone
Vincent.Galvin@bowmanandbrooke.com
Robert.Rudock@bowmanandbrooke.com
Whitney.Cruz@bowmanandbrooke.com
Wendy.Lumish@bowmanandbrooke.com

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com